IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHENG CUI, | : | NO. 13-5897 |
| Defendant. | : | |

## MEMORANDUM

PRATTER, J.                                                                                              OCTOBER 24, 2014

After Defendant Cheng Cui failed to respond to its Amended Complaint, Malibu Media filed this motion for default judgment, seeking statutory damages, attorneys' fees, costs, and a permanent injunction. Mr. Cui did not respond to Malibu Media's motion. The Court held a hearing on the matter on October 22, 2014.[1] The matter is now ripe for decision.

### BACKGROUND

Malibu Media alleges that the owner of IP address 71.230.114.9 illegally downloaded and distributed its copyrighted works (adult films) via the BitTorrent file distribution network. This IP address was identified by Malibu Media's investigator, IPP International. After filing the Complaint in this action, Malibu identified Cheng Cui as the owner of the IP address via a subpoena of his internet service provider. It served Mr. Cui on January 27, 2014. When Mr. Cui failed to file a timely answer, Malibu Media requested entry of default. The Clerk entered default on March 17, 2014. After months passed and no activity appeared on the docket, the

---

[1] A hearing on the matter was originally scheduled for October 7, 2014. On that date, neither party appeared, and the Court rescheduled the hearing for October 22, 2014. Counsel for Malibu Media did appear for the October 22, 2014 hearing, but Defendant did not.

Court ordered Malibu Media to show cause why its claims should not be dismissed for lack of prosecution. Within two days, Malibu Media filed a motion for default judgment.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55 governs the procedure a plaintiff must follow to obtain a default judgment against a nonresponsive defendant. First, if the plaintiff shows the defendant's "fail[ure] to plead or otherwise defend, ... the clerk must enter [the defendant's] default," Fed. R. Civ. P. 55(a), which is only valid if the defendant was properly served. *See Petrucelli v. Bohringer & Ratzinger,* 46 F.3d 1298, 1304 (3d Cir.1995).

The plaintiff may then "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). The court's initial inquiry is "whether the unchallenged facts constitute a legitimate cause of action." 10A Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 2688 (3d ed. 2013) (citing cases). As at the motion to dismiss stage, the court accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof, *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir. 1990), as well as all reasonable inferences that can be drawn from the complaint, *e.g., Yang v. Hardin,* 37 F.3d 282, 286 (7th Cir.1994). Conclusory allegations and the parties' legal theories or "conclusions of law" are not entitled to the same presumption and are not deemed admitted. Wright & Miller, *supra,* § 2688.

If the court determines that the plaintiff has stated a cause of action, it must then assess damages. Unlike liability, unless damages are "liquidated or computable," they "cannot be awarded simply on the basis of the pleadings, but must instead be established at an evidentiary hearing held pursuant to [Rule] 55(b)(2)," *Comdyne I,* 908 F.2d at 1152, or otherwise by such proof as the plaintiff may submit without a hearing.

Default judgments are disfavored, *see Farnese v. Bagnasco,* 687 F.2d 761, 764 (3d Cir. 1982); the default judgment context usually offers none of the adversarial argument upon which the American legal system is founded and which remains a pillar of courts' ability to make informed and well-reasoned decisions.  Thus, under *Chamberlain v. Giampapa,* 210 F.3d 154 (3d Cir. 2000), the district court must examine three additional factors to determine whether it should grant a default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  *Chamberlain,* 210 F.3d at 164.

"Considerable delays," especially those that might "stretch on indefinitely," are sufficient to show prejudice to the plaintiff.  *Grove v. Rizzi 1857 S.P.A.,* No. 04–2053, 2013 WL 943283, at *2 (E.D. Pa. Mar. 12, 2013) (citation omitted).  Second, outside of the court's obligation to decide whether it has jurisdiction and whether the complaint states a claim, the court may presume that an absent defendant who has failed to answer has no meritorious defense, *e.g., Doe v. Simone,* No. 12–5825, 2013 WL 3772532, at *5 (D.N.J. July 17, 2013), because "[i]t is not the court's responsibility to research the law and construct the parties' arguments for them," *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008).  Third, the defendant's failure or refusal to "engage[ ] in the litigation process and [to] offer[ ] no reason for this failure or refusal" may "qualif[y] as culpable conduct with respect to the entry of a default judgment—indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative."  *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.,* 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009).

**DISCUSSION**

Malibu Media served its Amended Complaint on Mr. Cui on January 27, 2014. Because Mr. Cui resides in Philadelphia, Pennsylvania, this Court has personal jurisdiction. Malibu Media alleges that Mr. Cui violated its copyrights by illegally downloading files through a BitTorrent file distribution network. Another court in this District has described the BitTorrent protocol as follows:

> [T]he BitTorrent software works automatically, joining together multiple internet subscribers (the "swarm") who are seeking to download the same movie at the same time. These individuals do not know each other. The software sends different "bits" of the same movie to different users and when the overall download is completed, each internet subscriber who has logged on to the software will have the complete movie on his or her own computer hard drive.

*Malibu Media LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 783-84 (E.D. Pa. 2013). The "bits" have unique "file hashes" that allow an investigator to track them back to the computer where they originated. Here, Malibu Media alleges that its private investigator downloaded from Mr. Cui "bits" of 24 different copyrighted movies owned by Malibu Media, demonstrating that Mr. Cui has downloaded those 24 movies and also that his downloaded copies were aiding others in downloading illegal copies of those works.

A claim for copyright infringement requires that the plaintiff prove: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *See Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). Infringement is considered willful if, for example, the defendant fails to respond and default is entered or the defendant used BitTorrent protocol to gain access to a work for free that otherwise would have required payment. *See Malibu Media, LLC v. Flanagan*, No. 2:13-CV-5890, 2014 WL 2957701, at *2, *2 n. 4 (E.D. Pa. Jul. 1, 2014). Malibu Media has sufficiently

4

alleged that Mr. Cui willfully infringed its copyrights on the 24 works listed in Exhibit A to its motion for default judgment.

Under 17 U.S.C. § 504(c)(2), statutory damages may be awarded in an amount of not less than $750 or more than $150,000 per infringed work. Malibu Media is asking for an award of $54,000, or $2,250 per infringed work (three times the statutory minimum). It states that "Plaintiff's actual damages far exceed this sum." To support that statement, Malibu Media argues that Mr. Cui "materially aided" each of the other participants in the BitTorrent swarm, which contained thousands of peers and continues to grow. It states that its actual damages are "the lost sales of its content to those thousands of infringers." However, Malibu Media provides no evidence regarding what those lost sales might be or even that any, let alone all, of the infringers would have paid for the content had it not been available for free via BitTorrent. Malibu Media also does not allege that Mr. Cui profited from the sharing of its copyrighted works, or provide evidence of how much money he saved by illegally downloading, rather than purchasing, Malibu Media's works.[2]

Malibu Media then points to three cases, none of which are from this District, let alone this Circuit, as evidence that "[c]ourts routinely award statutory damages in an amount equal to $30,000 for intentional online copyright infringement per work on default judgment." *See Achte/Neunte Boll King Beteiligumgs GMBH & Co. KG v. Palmer*, 2:11-cv-70-FtM-29SPC, 2011 WL 4632597 (M.D. Fla. Oct. 6, 2011); *Liberty Media Holdings, Inc. v. Quynn Alan Phillips, Everette v. Astrue*, No. 3:11-cv-00029-JAH-JMA, Docket No. 12 (S.D. Cal. June 6, 2011); *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398 (S.D.N.Y. 2002). However, the cases

---

[2] At oral argument, counsel for Plaintiff stated that a subscription to Plaintiff's website costs $9.99 a month, or $99 a year.

cited either involve very different fact patterns, *see Getaped.com*, 188 F. Supp. 2d 398 (awarding requested $30,000 in statutory damages in a case in which a competitor copied plaintiff's website sourcecode outright and used it for a website selling competing products), an award of damages with no discussion as to why the court chose that particular amount aside from the plaintiff's request, *see Achte/Neunte*, 2011 WL 4632597, or a reduction of the requested amount without an explanation for why it was not reduced further, *see Liberty Media Holdings*, Docket No. 12. Moreover, in each of these cases, only one or two instances of infringement occurred, meaning that the total statutory damages award was only $30,000 or $60,000.

In cases from various jurisdictions dealing with Malibu Media specifically, courts have awarded far less than $30,000 per infringement at the default judgment stage, and often less than the $2,250 per work Malibu Media routinely requests. *See, e.g., Flanagan*, 2014 WL 2957701, at *4 (awarding $1,500 per infringed work, rather than the $2,250 requested, because, on the one hand, participating in a BitTorrent "swarm" involves both personal use and sharing with others, but, on the other hand, there was no allegation that the defendant was the original user ("seeder") who first made the work available to the public from his computer); *Malibu Media v. Brenneman*, No. 3:13-cv-00332, 2013 WL 6560387, at *3 (N.D. Ill. Dec. 13, 2013) (awarding $1,500 per work in BitTorrent case rather than $2,250 because the defendant was "merely one participant in a group of users sharing bits and pieces of [the plaintiff's] works"); *Malibu Media v. Schelling*, Case No. 13-11436, 2014 WL 3400580, at *1 (E.D. Mich. Jul. 8, 2014) (awarding statutory minimum of $750 per work).

Here, although Malibu Media requests $2,250 per infringing work, the Court will award $750 per work, or $18,000. Malibu Media has failed to provide the Court with any evidence supporting an award of damages greater than the statutory minimum. In its Amended Complaint,

Malibu Media alleges that Mr. Cui committed the violations "willfully," but provides very little factual detail regarding Mr. Cui's intentions and personal actions in violating Malibu Media's copyrights. At oral argument, Malibu Media acknowledged that it had no evidence that Mr. Cui was a "seeder" and was unable to tell the Court how many other users Mr. Cui aided in violating Malibu Media's copyrights. As noted above, no evidence was provided regarding Malibu Media's lost profits or Mr. Cui's financial gain, if any, from infringing the works. While the Court understands that Malibu Media need not prove that it lost a specific dollar amount because of Mr. Cui's conduct to justify an award of statutory damages, the Court requires more than Malibu Media has provided here to support an award in excess of the statutory minimum. Moreover, the Court believes that a damages award of $18,000 plus attorneys' fees is sufficient to deter future violations by Mr. Cui or other individuals.

Malibu Media also seeks a permanent injunction enjoining Mr. Cui "and all other persons who are in active concert or participation with [him]" from continuing to infringe Malibu Media's copyrighted works and ordering Mr. Cui to delete the digital media files containing Malibu Media's works and the "infringing copies" of the works. A plaintiff seeking a permanent injunction "must demonstrate: (1) whether the moving party has shown actual success on the merits; (2) whether denial of injunctive relief will result in irreparable harm to the moving party; (3) whether granting of the permanent injunction will result in even greater harm to the defendant; and (4) whether the injunction serves the public interest." *See Shields v. Zuccarini,* 254 F.3d 476, 482 (3d Cir. 2001). All of these factors weigh in favor of Malibu Media's requested injunction. While the Court agrees that an injunction against Mr. Cui is appropriate, an injunction directed at "all other persons who are in active concert or participation

with [him]" implicates individuals who are not part of this lawsuit and over whom the Court may not even have jurisdiction. Thus, the Court will grant the injunction as to Mr. Cui only.

Finally, Malibu Media seeks attorneys' fees of $1,182 and costs of $495. Under 17 U.S.C. § 505, a district court may award costs and attorneys' fees to a prevailing party in a copyright infringement suit. After reviewing the declaration of Malibu Media's counsel setting forth the time spent on this matter, the Court finds that the fees and costs sought are reasonable.

**CONCLUSION**

For the foregoing reasons, the Court will grant Malibu Media's motion for default judgment in part and deny it in part. An appropriate Order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge